**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Yolanda Mays and Tommy Holmes, | Case No. |
| | **Complaint** |
| Plaintiffs, | |
| | |
| v. | Jury Trial Demanded |
| | Fed. R. Civ. P. 38(b) |
| Andrew William Schroeder, acting in his individual capacity, Mark Joseph Suchta, acting in his individual capacity, Alan Douglas Salvosa, acting in his individual capacity, and City of Minneapolis. | |
| | |
| Defendants. | |

For their Complaint, Plaintiffs Yolanda Mays ("Mays") and Tommy Holmes ("Holmes") state and allege as follows:

## PARTIES AND VENUE

1.   Plaintiff Mays is a resident of Brooklyn Center, Hennepin County, Minnesota.

2.   Plaintiff Holmes is a resident of Brooklyn Center, Hennepin County, Minnesota.

3.   Defendant Andrew William Schroeder ("Schroeder") is, upon information and belief, a citizen of Minnesota. Schroeder served as a Minneapolis Police Department ("MPD") officer on March 21, 2023. Schroeder acted under color of state law at all material times. He is sued in his individual capacity.

4.     Defendant Mark Joseph Suchta ("Suchta") is, upon information and belief, a citizen of Minnesota. Suchta served as an MPD officer on March 21, 2023. Suchta acted under color of state law at all material times. He is sued in his individual capacity.

5.     Defendant Alan Douglas Salvosa ("Salvosa") is, upon information and belief, a citizen of Minnesota. Salvosa served as Brooklyn Center Police Department ("BCPD") officer on March 21, 2023. Salvosa acted under color of state law at all material times. He is sued in his individual capacity.

6.     Defendant City of Minneapolis is a municipality incorporated in the State of Minnesota and the public employer of Defendants Schroeder and Suchta. The MPD is an agency of the City of Minneapolis.

## JURISDICTION

7.     Plaintiffs bring this action pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth and Fourteenth Amendments to the United States Constitution, and 28 U.S.C. §§ 1331 and 1343(a)(3). These statutory and constitutional provisions confer original jurisdiction of this Court over this matter.

8.     The events giving rise to this action occurred in Brooklyn Center, Minnesota. Venue is proper under 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

9.     Mays owns a residence in Brooklyn Center, Minnesota (the "Residence").

10.     On or about March 21, 2023, Schroeder and Suchta came to the Residence and knocked on the door. Mays was not home at the time. Holmes was in the basement at the time.

11. Schroeder took mail out of a mailbox on Mays' door and read the items.

12. Suchta went to the window and looked into the Residence.

13. Suchta saw a baby doll on a couch in Mays' home.

14. Suchta had Schroeder look at the baby doll on the couch through the window.

15. The officers discussed that the baby doll could either be a doll or a real baby that had died. Suchta remarked that he thought it was a doll.

16. After viewing the baby doll, Schroeder contacted Brooklyn Center emergency services and reported a potential baby in distress.

17. Salvosa was a Brooklyn Center officer who responded to Schroeder's call.

18. Salvosa was familiar with Schroeder and responded to previous calls with him.

19. Salvosa looked through the window and saw the baby doll on the couch.

20. Salvosa kicked the door in on Mays' residence.

21. Upon information and belief, the BCPD had door code information that permitted access to Mays' residence without destroying the door. Salvosa declined to use the door code and instead destroyed the door.

22. Approximately ten minutes passed from Schroeder and Suchta's initial approach to the time that Salvosa kicked the door in.

23. Kicking the door in caused damage to the door, frame, and home.

24. Suchta and Schroeder claimed that they were investigating an open file when they came to Mays' residence.

25. Mays' residence was not connected to any actual investigations, however.

26. The baby doll that the officers saw does not look like a real baby. It would be obvious to any reasonable observer that it was a baby doll.

27. The baby doll has stitching on joints, a plastic sheen, and is not particularly lifelike.

28. Upon information and belief, officers used the observation of a baby as a pretext to gain entry into Mays' home to conduct an illegal and unauthorized search.

29. The officers' manner of entry scared Holmes at the time. He thought that attackers or intruders were making entry into the home.

30. After officers made entry to the home, they conducted a search of Mays' garage.

31. Officers' actions were visible to neighbors and the public. The nature of the officers' activities suggested that Mays was involved in criminal activity.

32. Mays' privacy was invaded and property was damaged by officers' actions. She suffered invasion of privacy, trauma, distress, and stigma due to the unlawful conduct of the officers.

33. Holmes suffered invasion of privacy, stigma, distress, trauma, and fear due to the officers' actions.

34. Minneapolis has customs of officers using false and pretextual justifications to conduct unlawful activities, including entries and searches.

35. Minneapolis ratifies officers' unlawful conduct by failing to investigate or discipline officers known to commit unlawful conduct of the type alleged here.

36.    Schroeder has approximately twenty disciplinary matters listed since 2015. Upon information and belief, allegations include credible evidence that Schroeder has conducted unlawful searches or seizures based on false or pretextual information. Minneapolis has not taken measures to discipline Schroeder to effectively prevent constitutional violations of the type listed here.

37.    In 2021, a judge found that Schroeder's claims about drugs seen in plain view were false when compared against BWC footage. The court found that Schroeder merely made an assumption that there would be drugs in a vehicle, and that assumption, even if correct, did not justify a search.

38.    A civilian alleged that Schroeder falsely justified a search and entry of their home in a disciplinary complaint in 2022. To date, that matter has not been resolved, and Schroeder has not received discipline.

39.    Generally, the MPD fails to effectively investigate and impose discipline. Such circumstances were described in reports and findings by the Minnesota Department of Human Rights and Department of Justice. The circumstances that contributed to false and unlawful searches were known to MPD at the time of this incident.

40.    Due to ineffective discipline and supervision and ratification of officers' false and pretextual justifications for unlawful searches, Schroeder and Suchta engaged in unconstitutional conduct in this matter.

41.    MPD's deliberate indifference and ratification of the unconstitutional conduct perpetrated by Schroeder and Suchta in this matter caused Mays and Holmes harm.

## CAUSES OF ACTION

### Count 1 – 42 U.S.C. § 1983 – Fourth Amendment Violation:
### Unlawful Search
### *Defendants Schroeder, Suchta, and Salvosa*

42.    Plaintiffs reallege the allegations in Paragraphs 1-41 as if fully stated herein.

43.    The defendants acted under color of state law while performing the acts described herein.

44.    The defendants deprived the plaintiffs of their Fourth and Fourteenth Amendment rights through the actions described herein.

45.    The defendants kicked in the Residence's door and entered the Residence without lawful basis. Once inside, officers conducted a search of the premises. The defendants did so based on false and pretextual claims.

46.    As a direct and proximate result of the acts of the defendants, the plaintiffs suffered injuries and other harms that entitle them to damages. Such injuries include, but are not limited to, invasion of privacy, property damage resulting due to the search, damages due to trauma and disruption, stigma and other harms resulting from the unlawful search and allegations.

47.    The defendants acted with evil intent or reckless indifference to the plaintiffs' rights. The defendants subjected the plaintiffs to deprivation of their rights in such a manner as to render the defendants liable for punitive damages. Punitive damages are necessary to punish the defendants for their conduct and deter further improper conduct.

48.    The plaintiffs are entitled to fully recover their costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

**Count 2 – *Monell* Civil Rights Violation**
***Defendant City of Minneapolis***

49.     Plaintiffs reallege the allegations in Paragraphs 1-41 as if fully stated herein.

50.     Before this incident, the City of Minneapolis had continuing and persistent customs of officers conducting illegal searches based on false and pretextual justifications.

51.     Schroeder, himself, has been the subject of multiple credible complaints that he conducted illegal searches based on false or pretextual information.

52.     The City of Minneapolis had notice that these customs were occurring.

53.     Despite notice, the City of Minneapolis failed to maintain an effective disciplinary system or adequate supervision to ensure that such misconduct did not occur.

54.     The circumstances that contributed to the unlawful conduct here were also referenced in findings by the Minnesota Department of Human Rights and Department of Justice.

55.     The City of Minneapolis engaged in deliberate indifference and ratification due to its failure to address the misconduct effectively.

56.     The plaintiffs were harmed due to the improper customs and circumstances caused by the City of Minneapolis.

57.     As a direct and proximate result of the acts of the City of Minneapolis, the plaintiffs suffered injuries and other harms that entitle them to damages.

58.     The plaintiffs are entitled to fully recover their costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

### Count 3 – 42 U.S.C. § 1983 – Conspiracy to Commit Violations of Constitutional Rights
*Defendants Schroeder, Suchta, and Salvosa*

59. Plaintiffs reallege the allegations in Paragraphs 1-41 as if fully stated herein.

60. Schroeder, Suchta, and Salvosa acted under color of state law while performing the acts described herein.

61. MPD officers Schroeder and Suchta conspired with BCPD officer Salvosa to engage in an unlawful search of the Residence.

62. In furtherance of the conspiracy, Schroeder, Suchta, and Salvosa provided false and misleading information and engaged in entry and a search of the Residence.

63. As direct and proximate result of the acts of the defendants, the plaintiffs suffered injuries and other harms that entitle them to damages.

64. The defendants acted with evil intent or reckless indifference to the plaintiffs' rights. The defendants subjected the plaintiffs to deprivations of their rights in such a manner as to render these defendants liable for punitive damages. Punitive damages are necessary to punish the defendants for their conduct and deter further improper conduct.

65. The plaintiffs are entitled to fully recover their costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

### **PRAYER FOR RELIEF**

WHEREFORE, the plaintiffs pray for judgment as follows:

1. That the Court find the defendants liable for the claims asserted herein;

2. A money judgment against the defendants, jointly and severally, in amount to be determined at trial for compensatory and other damages, including punitive damages

against the individual defendants, together with costs, including reasonable attorneys' fees under 42 U.S.C. § 1988 and prejudgment interest;

3.    For such other and further relief as this Court may deem just and equitable.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Date: May 14, 2024

**LAW OFFICE OF ERIC A. RICE, LLC**

*s/Eric Rice*
Eric A. Rice (MN #0388861)
1 W. Water St., Ste. 275
St. Paul, MN 55107
P: (651) 998-9660
F: (651) 344-0763
eric@ricedefense.com

Attorney for Plaintiffs